IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARRY KORUNKA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-CV-573-MAB[1] |
| | ) |
| SCOTT THOMPSON, ANN LAHR, and ROB JEFFREYS, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendants Rob Jeffreys, Ann Lahr, and Scott Thompson (Doc. 31; *see also* Doc. 32). For the reasons explained below, the motion is granted.

## BACKGROUND

In June 2021, Plaintiff Larry Korunka, an inmate with the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 for purported deprivations of his constitutional rights at Centralia Correctional Center (Doc. 1). Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on an Eighth Amendment claim against Thompson, Lahr, and

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (*see* Doc. 25).

Jeffreys for exhibiting deliberate indifference to Plaintiff's serious medical needs related to breathing issues (Doc. 9).

Defendants filed their motion for summary judgment on the issue of exhaustion on November 22, 2021 (Docs. 31, 32). Defendants argue that Plaintiff's grievances are not all full exhausted but also none of the grievances name, describe, or identify Defendants as the target of the grievances (Doc. 32). After receiving a couple lengthy extensions of time, Plaintiff filed his response in opposition to the motion for summary judgment on April 22, 2022 (Doc. 38). The Court reviewed both parties' briefs and determined there are no issues of fact and a hearing is not necessary.

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed

courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). Where there are no material factual disputes, an evidentiary hearing is not necessary. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question"). Here, there is no material facts in dispute and no hearing is required because, in his response, Plaintiff did not assert any of his own facts or disagree with any of the facts asserted by Defendants (*see* Doc. 38).

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). There are slightly different procedures for non-emergency and emergency grievances. Here, only the procedure for emergency grievances is relevant.

The regulations provide that an inmate may request that a grievance be handled as an emergency by submitting the request directly to the warden. *Id*. at § 504.840. If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is processed on an expedited basis. *Id*. If the inmate is not satisfied with the warden's expedited decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id*. at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director. *Id.* at § 504.850(d). The Director then makes a final determination of the grievance. *Id.* at § 504.850(e). For grievances that were processed as an emergency, the ARB "shall expedite processing" of the appeal. *Id.* at § 504.850(f).

### FACTUAL BACKGROUND

In the Complaint, Plaintiff alleged that he has difficulty breathing and needs an oxygen machine (Doc. 1; Doc. 9). Plaintiff alleged that during the COVID-19 pandemic, Warden Scott Thompson refused to direct the medical department to provide Plaintiff's breathing treatments (Doc. 1; Doc. 9). Additionally, Warden Thompson required Plaintiff to wear an unsanitary face mask that exacerbated his breathing issues (Doc. 1; Doc. 9). Plaintiff alleged that because he was required to wear an un-sanitary mask and was not receiving breathing treatments, he suffered from a "lack of air, has a hard time walking to and from the health care unit, the chow hall, and commissary, and has developed a very bad cough." (Doc. 1; Doc. 9). Plaintiff alleged that he filed grievances regarding these

issues that were denied by Ann Lahr (a member of the Administrative Review Board) and Rob Jeffreys (the Director of the IDOC) (Doc. 1; Doc. 9).

There were purportedly three grievances submitted that were dated March 2, 2020, February 18, 2021, and March 5, 2021 (Doc. 1, pp. 6–7).

Defendants were unable to find any record of a March 2, 2020 grievance (Doc. 32, p. 2; *see* Doc. 32-1; Doc. 32-2; Doc. 32-3; Doc. 32-4; Doc. 32-5). And Plaintiff did not provide any evidence or argument about this grievance (*see* Doc. 38).

The grievance dated February 18, 2021 (#21-2-95) was submitted on an emergency basis (Doc. 32-2, pp. 1–4). Plaintiff indicated that he suffered from various medical conditions, including C.O.P.D., asthma, Hepatitis C, "PAD,"[2] and [Barrett's esophagus], which he was not being provided adequate treatment for. He stated that his medications provided little relief and his request for a physical evaluation had been ignored or denied by the doctor. The warden determined the grievance was an emergency and ordered it to be addressed on an expedited basis. In order to respond to the grievance, the grievance officer sought input from the Health Care Unit Administrator ("HCUA"), who indicated that Plaintiff was seen on February 23, 2021, for his request for pain medication and again the following day for his chronic conditions, and his treatment plan was reviewed and revised. The HCUA further stated that if Plaintiff felt his needs had not been resolved, he should request a nurse sick call visit or contact her for further clarifications of his current orders. Based on the information received, the grievance officer determined that

---

[2] "PAD" may stand for peripheral artery disease.

Plaintiff's medical concerns were being addressed and recommended that the grievance be denied. The warden concurred with the recommendation and denied the grievance on March 8, 2021. The grievance and the warden's response were returned to Plaintiff (*see* Doc. 32-3; Doc. 32-4, p. 2), but Plaintiff admitted he did not appeal this grievance to the ARB, claiming there was no need to do so because he would be taken care of at nurse sick call (Doc. 38, p. 2).

The grievance dated March 5, 2021 (#21-3-44) was submitted on an emergency basis (Doc. 32-1). Plaintiff indicated that he was sent by security staff to the Health Care Unit on March 2, 2021, because he was having difficulty breathing but he was denied a breathing treatment again. The warden determined the grievance was an emergency and ordered it to be addressed on an expedited basis. In order to respond to the grievance, the grievance officer sought input from the HCUA, who indicated that Plaintiff was seen on March 2nd by a nurse and his exam was stable. Furthermore, Plaintiff did not have a nebulizer treatment ordered so the nurse could not give him one. The nurse did not think she needed to call the doctor given that Plaintiff was stable and she instead scheduled Plaintiff for a follow-up with the doctor, who saw him on March 4th. The doctor altered Plaintiff's treatment plan based on his complaints and he had another follow-up appointment scheduled in April. Based on this information, the grievance officer determined that Plaintiff's medical concerns were being addressed and recommended that the grievance be partially upheld. The warden concurred with the recommendation. Plaintiff appealed this grievance to the ARB. The ARB through Ann Lahr asked the Health Care Unit Administrator for an update. Based on the information she received,

Lahr determined the grievance was moot given that Plaintiff had been see by the medical staff for the issue and it was resolved. The Director concurred.

## DISCUSSION

There is evidence of two relevant grievances: the emergency grievance dated February 18, 2021, and the emergency grievance dated March 5, 2021. It is undisputed that the March grievance was fully exhausted. The February grievance was not, but Plaintiff argues that he did not need to appeal the grievance to the ARB because there was no further relief available to him (Doc. 38). *See White v. Bukowski*, 800 F.3d 392, 395 (7th Cir. 2015) ("[T]here was no requirement to exhaust 'where the relevant administrative procedure lacks authority to provide *any* relief or to take *any* action whatsoever in response to a complaint.'" (quoting *Booth v. Churner,* 532 U.S. 731 (2001))) (emphasis in original). Even if the Court assumes Plaintiff is correct, there is another flaw with the February grievance, as well as the March grievance, that render them insufficient to exhaust as to Defendants: neither of the grievances name or describe Warden Thompson, Ann Lahr, or Director Jeffreys or the conduct at issue in this case.

The administrative regulations require a prisoner's grievance to "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(b). If the offender does not know the names of the individual, he "must include as much descriptive information about the individual as possible." *Id.* The grievance forms used by Plaintiff likewise asked for "a description of what happened, when and where it happened, and the name or

identifying information for each person involved" (*see* Doc. 32-1, p. 5; Doc. 32-2, p. 2). *Contra Maddox v. Love*, 655 F.3d 709, 721, 722 (7th Cir. 2011) (finding inmate did not fail to exhaust even though grievance did not contain any names because, while the regulation required offender to name or describe the individual, the grievance form itself did not indicate that a name had to be provided); *Conley v. Anglin*, 513 Fed. Appx. 598, 601 (7th Cir. 2013) ("We have held that when a prisoner uses a grievance form asking only for a 'Brief Summary of Grievance,' . . . then the omission of names or identifying information does not necessarily mean that the prisoner failed to exhaust his administrative remedies so long as he otherwise followed the grievance process."). In short, the grievance must provide sufficient information to identify the defendant as the target of the complaint or to implicate them in the alleged wrongdoing. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (explaining "fatal defect" in grievance was "the absence of anything in it to indicate that [the defendant] was the target."); *see also Ward v. Hoffman*, 670 Fed. Appx. 408, 410 (7th Cir. 2016) (affirming summary judgment based on prisoner's failure to exhaust where he complained only about the procedures used by the adjustment committee and did not mention excessive force or the defendants); *Ambrose v. Godinez*, 510 Fed. Appx. 470, 472 (7th Cir. 2013) (affirming the dismissal of prison officials where the plaintiff's grievance failed to mention the officials by name or otherwise implicate them in the alleged constitutional violation).

Here, neither grievance contains any reference to Warden Thompson, Ann Lahr, or Director Jeffreys by name, title, description, or any other identifiers. Nor do the grievances describe any conduct that can be imputed to Defendants. In fact, the

grievances do not even appear to address the conduct at issue in this lawsuit. In the February 2021 grievance, Plaintiff complained generally that he was not receiving adequate treatment for his various medical conditions and his request to be seen had gone unanswered. In the March 2021 grievance, he complained that he was denied a breathing treatment in the Health Care Unit. There is no indication in this grievance or the response that the breathing treatment was denied for reasons related to the pandemic, or that it was somehow Warden Thompson's fault. And there is absolutely no mention in either grievance of Plaintiff being forced to wear unsanitary masks. Instead, Plaintiff only complained about the actions (or inactions) of the medical staff and the medical care he received (or did not receive) from them. Nothing in the grievances suggests Plaintiff was complaining about non-medical prison officials improperly handling his grievances and turning a blind eye to the inadequate medical care he was purportedly receiving. A claim that medical staff was providing inadequate treatment is distinct and unique from a claim that administrators were ignoring Plaintiff's complaints about the treatment he received or failing to ensure that he received adequate treatment. As such, the grievances cannot serve to exhaust Plaintiff's claims against Defendants. *See Roberts*, 745 F.3d at 236; *Waldrop v. Wexford Health Sources, Inc.*, 646 Fed.Appx. 486, 490 (7th Cir. 2016) (unpublished opinion).

Accordingly, Defendants Thompson, Lahr, and Jeffreys are entitled to summary judgment and shall be dismissed without prejudice as Defendants in this case.

## CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Defendants Rob Jeffreys, Ann Lahr, and Scott Thompson (Doc. 31) is **GRANTED.** This case is **DISMISSED without prejudice** for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: July 21, 2022**

s/ Mark A. Beatty<br>
**MARK A. BEATTY**<br>
**United States Magistrate Judge**